UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

| | | |
|---|---|---|
| JAMES MICHAEL ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 0:15-cv-00066-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CAROLYN W. COLVIN, | ) | **&** |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

**** **** **** ****

James Michael Anderson seeks judicial review of an administrative decision of the Commissioner of Social Security, which denied Anderson's claim for supplemental security income benefits as well as disability insurance benefits. Mr. Anderson brings this action pursuant to 42 U.S.C. § 405(g), alleging various errors on the part of the ALJ considering the matter. The Court, having reviewed the record and for the reasons set forth herein, will GRANT Mr. Anderson's Motion for Summary Judgment [R. 12] and REMAND the action to the Social Security Administration for further consideration.

**I**

**A**

Plaintiff James Michael Anderson filed an application for Title II disability insurance benefits and Title XVI supplemental social security in July 2013, alleging disability beginning on January 6, 2012. [Transcript (hereinafter, "Tr.") 21.] Anderson's motion for summary judgment explains that Anderson suffers from, among other things, back pain, hernias, and mental health issues such as depression and post-traumatic stress disorder. [*See* R. 12-1 at 2.] Anderson's

claims for Title II and Title XVI benefits were denied initially and upon reconsideration. [Tr. 21.] Subsequently, a hearing was conducted upon Anderson's request. [*See id*.] Following the hearing, ALJ Ronald M. Kayser issued a final decision denying both of Anderson's claims for benefits. [Tr. 21-28.]

To evaluate a claim of disability for both Title II disability insurance benefit claims and Title XVI supplemental security income claims, an ALJ conducts a five-step analysis. *Compare* 20 C.F.R. § 404.1520 (disability insurance benefit claims) *with* 20 C.F.R. § 416.920 (supplemental security income claims).[1]  First, if a claimant is performing a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled." 20 C.F.R. § 404.1520(d). Before moving on to the fourth step, the ALJ must use all of the relevant evidence in the record to determine the claimant's residual functional capacity ("RFC"), which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545.

Fourth, the ALJ must determine whether the clamant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from

---

[1] For purposes of a disability insurance benefits claim, a claimant must show that his impairments were disabling prior to the date on which his insured status expired. 20 C.F.R. § 404.131. Beyond this requirement, the regulations an ALJ must follow when analyzing Title II and Title XVI claims are essentially identical. Hereinafter, the Court provides primarily the citations to Part 404 of the relevant regulations, which pertain to disability insurance benefits. Parallel regulations for supplemental security income determinations may be found in Subpart I of Part 416.

doing past relevant work, he is not "disabled." 20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is "disabled."  20 C.F.R. § 404.1520(f).

Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  At step five, the burden shifts to the Commissioner to identify a significant number of jobs that accommodate the claimant's profile, but the claimant retains the ultimate burden of proving his lack of residual functional capacity.  *Id.*; *Jordon v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

At the outset of this case, the ALJ determined that Mr. Anderson meets the insured status requirements of the Social Security Act through December 31, 2016.  [Tr. 21, 23]; *see also* 20 C.F.R. § 404.131.  Then at step one, the ALJ found Anderson had not engaged in substantial gainful activity since his alleged disability onset date.  [Tr. 23.]  At step two, the ALJ found Anderson to suffer from the severe impairments of status-post hernia, bulging in the lumbar spine, mild foraminal stenosis in the cervical spine, and a recurrent major depressive disorder.  [Tr. 24.]  At step three, the ALJ determined Anderson's combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404 or Part 416.  [*Id.*]  Before moving on to step four, the ALJ considered the entire record and determined Anderson possessed the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with certain limitations described as follows:

> [H]e can only frequently climb ramps and stairs, balance, stoop, crouch kneel and crawl; and must avoid climbing ropes, scaffolds and ladders.  He can perform the mental demands of unskilled work, including the ability to understand, remember and carry out detailed instructions and deal with change in the workplace.

3

[Tr. 25.] After explaining how he determined Anderson's RFC [Tr. 25-26], the ALJ found at step four that, based on this RFC, Anderson is capable of performing various jobs that exist in significant numbers in the national economy. Accordingly, the ALJ concluded Anderson was not disabled under 20 C.F.R. §§ 404.1520(g) or 416.920(g). [Tr. 27-28.] The Appeals Council initially declined to review the ALJ's decision [*see* Tr. 8], but the Appeals Council then set aside that decision to consider additional information presented by Mr. Anderson.[2] [Tr. 1-2.] After considering the new information, however, the Appeals Council once again declined to review the ALJ's decision. [*See id*.] Anderson now seeks judicial review in this Court.

**B**

The Court's review is generally limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To determine whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535

---

[2] This additional information includes a description of ALJ Kayser's alleged bias at the hearing and supplemental medical records from Dr. Tommy von Luhrte, which are both discussed in more detail throughout this Opinion.

4

(6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)).  However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations.  *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988).  Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.  *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## II

### A

The Court first addresses Mr. Anderson's contention that ALJ Kayser treated him unfairly or conducted his hearing with bias.  [*See* R. 12-1 at 9-12.]  When considering a claim that an ALJ's decision has been colored by bias, the Court must begin with the "presumption that policymakers with decisionmaking power exercise their power with honesty and integrity." *Collier v. Comm'r of Soc. Sec.*, 108 F. App'x 358, 363-64 (6th Cir. 2004) (citing *Navistar Int'l Transportation Corp. v. United States Envt'l Protection Agency*, 941 F.2d 1339, 1360 (6th Cir. 1991)).  "The burden of overcoming the presumption of impartiality rests on the party making the assertion [of bias], and the presumption can be overcome only with convincing evidence that a risk of actual bias of prejudgment is present."  *Id.* (internal quotation marks and citations omitted).  That is to say, "any alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference."  *Id.*

The Court notes Mr. Anderson did preserve this issue for review, because he presented allegations of bias and a request for a new ALJ to the Appeals Council.  [*See* Tr. 2]; *Wells v.*

*Apfel,* 234 F.3d 1271 (6th Cir. 2000) (explaining a claimant's failure to request withdrawal of an ALJ during the hearing or in his request for review before the Appeals Council would constitute a waiver of his right to object to the ALJ's conduct). Nonetheless, Anderson is not entitled to relief on this claim. The record does suggest, as Mr. Anderson contends, that the ALJ made various offhand and inappropriate comments regarding his marital history and personal relationships. [*See* Tr. 33-73.] However, the Sixth Circuit has repeatedly found that an ALJ's "unwarranted skepticism" towards a claimant, as well as an ALJ's "obvious frustration, emotional mannerisms and abruptness" are insufficient to establish actual bias. *Collier*, 108 F. App'x at 364 (citing *Wells*, 234 F.3d 1271).

After carefully reading the entire hearing transcript, the Court finds an objective listener would not conclude the ALJ conducted the hearing, which covered a wide variety of topics, unfairly. At most, ALJ Kayser was "demeaning and discourteous" to Mr. Anderson, which, while unfortunate, does not suffice to overcome the presumption of impartiality. *See id.* The undersigned joins with the Court of Appeals in reminding ALJs of the importance of treating all claimants with basic respect despite the grueling nature of their tasks. *See Wells*, 234 F.3d 1271. Still, the record before the Court does not require remand and reassignment of Anderson's case due to any alleged bias or adversarial behavior on the part of ALJ Kayser.

**B**

Mr. Anderson also alleges the ALJ failed to properly consider the opinion of his treating physician Dr. Tommy von Luhrte. Anderson draws the Court's attention to two particular parts of the record he argues the ALJ should have considered: an April 2012 assessment by Dr. von Luhrte indicating Anderson should refrain from lifting more than ten pounds [Tr. 281] and an

April 2015 opinion recommending Anderson refrain from lifting more than five pounds. [Tr. 389-90.]

The latter opinion has no bearing on the case, as it was not available to the ALJ at the time he made his decision and was submitted by Mr. Anderson only to the Appeals Council. [*See* Tr. 5-6.] The Sixth Circuit "has repeatedly held that evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). The information was simply not available to the ALJ when he reviewed Mr. Anderson's claims and thus provides no grounds whatsoever for Anderson to now argue the ALJ improperly ignored it.

The ALJ's failure to even mention the other medical evidence from Dr. von Luhrte, however, is concerning. The Social Security Administration's regulations provide that:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2). The other factors which must be considered when the treating source opinion is not given controlling weight include the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with other evidence in the record, and whether the treating source is a specialist. 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), d(3)-d(5); 416.927(d)(2)(i)-(ii), d(3)-d(5).

The regulations also contain a clear procedural requirement that the ALJ must give "good reasons" for discounting a treating physician's opinion, specific enough "to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." 20 C.F.R. §§ 1527(d)(2), 416.927(d)(2); Social Security Ruling ("SSR") 96-2, 1996 WL 374188, at *5 (July 2, 1996). The purpose of the reason-giving requirement is to allow "claimants [to] understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (citation and internal quotation marks omitted). In addition, the requirement "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* Failure to follow the procedural requirement denotes a lack of substantial evidence, even where the ALJ's conclusion may otherwise be justified on the record. *Id.* at 546. "To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with § 1527(d)(2), would afford the Commissioner the ability to violate the regulation with impunity and render the protections rendered therein illusory." *Id.*

Admittedly, the eleven pages of medical evidence from Dr. von Luhrte are somewhat irregular. [*See* Tr. 281-92.] For one, his handwritten treatment notes are barely legible. Also, his medical opinion that Mr. Anderson may lift only ten pounds is conclusory, and he maintains Anderson has been totally disabled since January 6, 2012, which is a determination reserved solely for the Commissioner. *See, e.g.*, 20 C.F.R. § 404.1527. But even where a medical source contains opinions reserved for the Commissioner, a relevant Social Security Ruling makes clear that the source's opinions "must not be disregarded." SSR 96-5p, 1996 WL 362206, at *34474

8

(July 2, 1996). The ALJ's decision must still explain the weight and consideration given to the evidence. *Id.*

It is true that the records from Anderson's treatment with Dr. von Luhrte do not contain any residual functional capacity finding prepared solely for this disability proceeding but, instead, stem from Anderson's underlying worker's compensation case. However, the record is clear that Anderson considers von Luhrte his treating physician [*see* Tr. 216 (identifying Dr. von Luhrte as his primary care physician in his disability application)], and at least one of the Commissioner's consultative examiners also identifies von Luhrte as such. [Tr. 337.] Further, prior to Mr. Anderson's request for a hearing, various notices sent from the Social Security Administration to Anderson indicate that Dr. von Luhrte's records were received on September 3, 2013, as well as considered by the Administration in its initial denials of Anderson's disability claims. [*See* Tr. 116, 122.] The ALJ's complete disregard of Dr. von Luhrte surely defies the spirit of the reason-giving requirement, which exists to protect Mr. Anderson and facilitate his comprehension of these proceedings. *See Wilson*, 378 F.3d at 544.

Moreover, Dr. von Luhrte's records are more germane to Mr. Anderson's disability claims than the Commissioner makes them out to be. The Commissioner argues the von Luhrte notes are concerned solely with Anderson's worker's compensation claim, which in turn stemmed from a finger injury that was not even alleged as an impairment in Anderson's disability application. [*See* R. 13 at 10-11.] Actually, Anderson's worker's compensation claim was based on work-related inguinal hernias [*see* Tr. 266-70], and that injury is listed as one of Anderson's relevant medical conditions in his disability application. [Tr. 213 (listing "hernia, compressed disk in back, and pain in shoulders" as physical conditions limiting his ability to

9

work).] Dr. von Luhrte's records, then, although from the worker's compensation proceeding, still relate to a relevant injury for purposes of Anderson's disability claims.

In the end, the Court finds the ALJ's failure to even mention Dr. von Luhrte's findings warrants remand. The Court will not allow the Social Security Administration to circumvent important procedural requirements, even if the ALJ's decision proves otherwise justified. *See Wilson*, 378 F.3d at 546.

## C

Finally, the Court also notes that Anderson points out several ways the ALJ allegedly misconstrued Anderson's medical records or left out other important information. [*See* R. 12-1 at 6-8.] Because the Court is ordering remand based on the procedural error discussed above, it will not address these arguments in detail. But for purposes of this case going forward, the Court does clarify a misstatement in the ALJ's decision regarding one of Mr. Anderson's mental health diagnoses.

At step two of the evaluation, the ALJ noted the following: "The claimant also alleged that he had post-traumatic stress disorder after his wife died. While it has been stated that he had been grieving, there is no evidence of being diagnosed with post-traumatic stress disorder." [Tr. 24.] In actuality, Mr. Anderson does have a post-traumatic stress disorder diagnosis from Dr. George Mercado, dated January 26, 2015. [*See* Tr. 377, 379.] The Commissioner has conceded the same [*see* R. 13 at 8], and the ALJ is directed to take that diagnosis into account upon remand.

## III

Being otherwise sufficiently advised, the Court hereby **ORDERS** as follows:

1. Plaintiff James Michael Anderson's Motion for Summary Judgment [R. 12] is

**GRANTED IN PART AND DENIED IN PART**;

2. The Commissioner's Motion for Summary Judgment [R. 13] is **GRANTED IN PART AND DENIED IN PART**;

3. This action is **REMANDED** to the Social Security Administration Office of Disability Adjudication and Review for reconsideration consistent with the above Opinion; and

4. Judgment in favor of the Plaintiff shall be entered contemporaneously herewith.

This the 21st day of December, 2016.

Gregory F. Van Tatenhove
United States District Judge